IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| J.A.L., | : | |
|     Plaintiff, | : | |
| VS. | : | 1:24-CV-67 (ALS) |
| Commissioner of Social Security, | : | |
|     Defendant. | : | |

**ORDER**

Plaintiff filed this Social Security appeal on May 14, 2024, challenging the Commissioner's final decision denying his disability application, finding him not disabled within the meaning of the Social Security Act and Regulations. (Doc. 3). Both parties consented to the United States Magistrate Judge conducting any and all proceedings herein, including but not limited to, ordering the entry of judgment. (Doc. 13; Clerk's Entry, July 18, 2024). The parties may appeal from the judgment, as permitted by law, directly to the Eleventh Circuit Court of Appeals. 28 U.S.C. § 636(c)(3). Jurisdiction arises under 42 U.S.C. §§ 405(g) and 1383(c). All administrative remedies have been exhausted.

*Legal Standard*

In reviewing the final decision of the Commissioner, the Court must evaluate whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards to the evidence. *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (per curiam). The Commissioner's factual findings are deemed conclusive if supported by substantial evidence. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Id.*

The Commissioner only needs to show he relied on evidence that "a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted).

In reviewing the ALJ's decision for support by substantial evidence, this Court may not reweigh the evidence or substitute its judgment for that of the Commissioner. Even if the Court disagrees with the Commissioner's conclusion, the Court "must affirm if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)(citations omitted). "In contrast, the [Commissioner's] conclusions of law are not presumed valid . . . The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)(internal citations omitted).

Under the regulations, the Commissioner evaluates a disability claim by means of a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner determines whether the claimant is working. Second, the Commissioner determines whether the claimant suffers from a severe impairment which significantly limits his or her ability to carry out basic work activities. Third, the Commissioner evaluates whether the claimant's impairments meet or equal listed impairments in Appendix 1 of Part 404 of the regulations. Fourth, the Commissioner determines whether the claimant's residual functional capacity (RFC) will allow a return to past relevant work. Finally, the Commissioner determines whether the claimant's RFC, age, education, and work experience allow an adjustment to other work.

*Administrative Proceedings*

Plaintiff filed an initial application for Disability Insurance Benefits on February 23, 2022. (Tr. 74). Plaintiff alleged an initial onset date of February 1, 2019. *Id.*[1] The Social Security Administration denied Plaintiff's claims initially and upon reconsideration. (Tr. 74-80, 87-89). Plaintiff timely requested a hearing and appeared before an Administrative Law Judge (ALJ) on August 23, 2023. (Tr. 34-60, 104-05).[2]

In a hearing decision dated November 21, 2023, the ALJ determined that there are a substantial number of jobs in the national economy that would accommodate Plaintiff's limitations. (Tr. 7-26). Accordingly, the ALJ determined Plaintiff was not disabled. *Id.* The ALJ's decision became the final decision of the Commissioner upon the Appeals Council's denial of review. (Tr. 1-9).

***Statement of Facts and Evidence***

Plaintiff was born on February 4, 1970, and was 48-years old at the time of his amended disability onset date. (Tr. 208). Plaintiff has past relevant work experience as a stocker. (Tr. 19). The ALJ determined that Plaintiff suffered from the following severe impairments: "diabetes mellitus with diabetic neuropathy, hypertension, obesity, and depressive disorder." (Tr. 12). The ALJ found "there was a lack of objective evidence to substantiate the existence of the claimant's alleged diabetic retinopathy as a medically determinable impairment." (Tr. 13).

Considering the "paragraph B" criteria, the ALJ found that Plaintiff had a mild limitation in his ability to understand, remember, or apply information; a mild limitation in his ability to interact with others; a moderate limitation in concentrating, persisting, or maintaining pace; and a

---

[1] Plaintiff asserts he amended his initial onset date to February 3, 2020, citing the transcript from the initial hearing before the ALJ. (Doc. 18 at 4; Tr. 69). However, the ALJ's final decision cites February 1, 2019, as the alleged initial onset date. (Tr. 12).
[2] An initial hearing was held on July 19, 2023, but Plaintiff was unable to attend because his wife became ill. (Tr. 67-73.) During this hearing, the ALJ took the testimony of a vocational expert ("VE"). *Id.* at 66-70.

moderate limitation in his ability to adapt or manage himself. (Tr. 14-15). Because the ALJ found that Plaintiff's medically determinable mental impairments did not cause at least two "marked" limitations or one "extreme" limitation, he found that the "paragraph B" criteria were not satisfied. (Tr. 15). Considering the evidence relating to all of Plaintiff's impairments, individually and in combination, the ALJ found no evidence that the combined clinical findings from such impairments reached the level of severity contemplated in the listings. (Tr. 13-14).

Considering the entire record, the ALJ determined that Plaintiff had the RFC "to perform light work…except with the following limitations: only occasional postural movements such as climbing, stooping, kneeling, crouching, and crawling and avoids concentrated exposure to cold, heat, humidity, and vibrations." (Tr. 15). The ALJ also determined Plaintiff had the RFC to "perform simple, routine work where duties basically stay the same day to day." *Id.* Finally, the ALJ indicated Plaintiff did not have the RFC required for "[c]ommercial driving and operating dangerous machinery." *Id.*

The ALJ determined that Plaintiff was unable to perform any past relevant work. (Tr. 23). Considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 20-21). In reaching this decision, the ALJ relied on both the Medical-Vocational Guidelines and the testimony of a vocational expert. *Id.* Ultimately, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, at any time between February 1, 2019, and the date of the decision. (Tr. 21).

## DISCUSSION

Plaintiff raises four enumerations of error: (1) the ALJ failed to adequately develop the record, and made his decision based on insufficient evidence, (2) the ALJ improperly drew a

negative inference from Plaintiff's failure to seek treatment without considering whether Plaintiff had good cause[3], (3) the ALJ failed to properly evaluate the medical opinion of Dr. Robin Walsh, and (4) the ALJ's RFC determination failed to account for Plaintiff's moderate limitations in concentration, persistence, and pace.

### I.     *Failure to Adequately Develop the Record*

Plaintiff asserts that "[t]here was not enough evidence in this case for the ALJ to make physical or mental RFC findings." (Doc. 18 at 12). Plaintiff asserts that the ALJ should have supplemented the record "by ordering a consultative exam." *Id.* at 11. The Commissioner responds that "Plaintiff has not established, with any certainty, that ordering an additional consultative examination was necessary for the ALJ to make an informed decision." (Doc. 21 at 5). Additionally, the Commissioner alleges that the ALJ ordered a consultative exam over three and a half years after Plaintiff's alleged disability date and approximately one year before the date of the ALJ's decision, and Plaintiff failed to attend this exam. *Id.* at 5–6.

"[T]he ALJ has a basic duty to develop a full and fair record." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). However, an ALJ "is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253 (11th Cir. 2007). "[R]emand for further development of the record is appropriate only when 'the record reveals evidentiary gaps which result in unfairness or "clear prejudice" ' to the claimant." *Stinson v. Kijakazi*, 565 F. Supp. 3d 1219, 1228 (M.D. Ala. 2021) (quoting *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995)). "Refusal to attend a consultative examination without good reason can result

---

[3] While Plaintiff did not explicitly enumerate this as a separate error in the Statement of Issues section of his Opening Brief, he substantively argued this point in the body of his brief. *See* Pl.'s Opening Br. at 14-15 (arguing that the ALJ improperly considered Plaintiff's lack of treatment without addressing his financial inability to afford it). Therefore, the Court will address this argument.

5

in the denial of disability benefits." *Gould v. Colvin*, 2014 WL 4279889 at *6 (N.D. Fla. 2014); *see also* 20 C.F.R. § 416.918(a) ("If you are applying for benefits and do not have a good reason for failing or refusing to take part in a consultative examination or test which we arrange for you to get information we need to determine your disability…, we may find that you are not disabled….").

The ALJ did not err by failing to order a consultative exam because the record contained sufficient evidence for the ALJ to make his decision. As to Plaintiff's physical RFC, the ALJ cites examinations of Plaintiff conducted in October of 2019 and April of 2020 which reflect intact pedal pulses, intact reflexes and sensation in the ankle and foot, normal monofilament tests, and no ulcerations or edema. (Tr. 427, 443). Notably, Plaintiff reported increased neuropathy in his feet during his February 4, 2020 appointment. (Tr. 368). Additionally, on March 23, 2021, Plaintiff presented to Mary Smock, NP, with complaints of peripheral neuropathy manifested as numbness in his lower extremities. (Tr. 484). The ALJ cites multiple physical examinations performed on Plaintiff between June 12, 2019 and March 12, 2020 which indicate that Plaintiff had a normal gait and was in no acute distress. (Tr. 362; 365–66; 370; 374). Finally, the ALJ cites multiple unremarkable physical examinations conducted between March of 2017 and November of 2018. (Tr. 409, 448, 453, 458, 463).[4] As to Plaintiff's mental RFC, the ALJ cites mental status examinations conducted between June 12, 2019, and March 12, 2020 which reflect that despite his depressed mood, Plaintiff exhibited intact memory, intact judgment, normal speech, intact abstract reasoning, normal vocabulary, normal attention span, and gross orientation to person, place and

---

[4] Plaintiff faults the ALJ for citing evidence which predates the alleged onset date. (Doc. 18 at 13). However, there is authority suggesting that it is appropriate, and even necessary, for the ALJ to consider medical evidence that predates the alleged onset date. *See Proulx v. Saul,* 2021 WL 941371 at *7 (M.D. Fla. 2021) ("Even though the above opinions were contained in treatment notes that predated the alleged disability onset date, the ALJ was nonetheless required to consider them…."); *see also Taylor v. Kijakazi,* 2022 WL 891833 at *5 (M.D. Ala. 2022) ("There is no blanket prohibition against an ALJ's considering medical evidence that predates the alleged onset date.").

time. (Tr. 362, 365–66, 370, 374). Additionally, the ALJ cites psychiatrist assessments conducted between October 14, 2019, and May 20, 2021, which indicate that Plaintiff was alert and oriented, had appropriate affect and demeanor, and had good insight and judgment. (Tr. 427, 436, 441, 470–71, 475).

Furthermore, Plaintiff was provided with an opportunity to attend two consultative exams, and failed to attend either exam. The state agency who made the initial disability determination directed Plaintiff to attend consultative examinations on October 3, 2022, and October 7, 2022. Plaintiff was warned that failure to attend these examinations without good cause "may result in [the] denial of [his] case." (Tr. 84). Plaintiff then failed to attend either examination, and the examiners were unable to contact Plaintiff to establish the reason for his failure to appear. (Tr. 86-87). On November 15, 2022, Plaintiff requested that the ALJ order a new consultative exam (Tr. 295). Plaintiff acknowledges "there is no mention in the record of why Plaintiff failed to attend th[ose] exam[s]." (Doc. 22 at 4).[5] Thus, even if the lack of a consultative exam had caused a gap in the record that prejudiced Plaintiff, that prejudice would be attributable to Plaintiff's own conduct. *See Robinson v. Colvin*, 2015 WL 4067266 at *8 (N.D. Ala. 2015) ("[T]he claimant has not shown that the lack of an additional exam has prejudiced her case. The claimant's failure to simply show up to either scheduled exam itself created the issue of an alleged incomplete record.").

II.     ***Improper Inference Based on Plaintiff's Lack of Treatment***

---

[5] Plaintiff notes that "[t]he state agency responsible for performing disability evaluations ordered a consultative exam at Reconsideration, not the ALJ" (Doc. 22 at 4). However, the Court finds no basis for distinguishing between failure to attend an exam ordered by a state agency and failure to attend an exam ordered by an ALJ. *See Anderson v. O'Malley,* 2024 WL 4713563 at *2 (M.D. Ala. 2024) ("Plaintiff's failure to show up for scheduled consultative exams created the alleged incomplete record…[A] State agency psychiatric consultant[] completed a psychiatric review technique (PRT) assessment and noted in his report that Plaintiff had failed to attend a scheduled mental consultative evaluation.")

Plaintiff argues that the ALJ erred by basing his decision in part on Plaintiff's failure to seek treatment, and then "failing to consider whether Plaintiff had good cause for failing to get more medical treatment." (Doc. 18 at 14–15). Plaintiff contends that the ALJ improperly relied on an inference based on Plaintiff's inability to afford treatment for his condition in two parts of the decision. (Doc. 18 at 12).

The Eleventh Circuit has established clear precedent regarding an ALJ's obligation when considering a claimant's failure to seek treatment. In *Ellison v. Barnhart*, the court held that "when an ALJ relies on noncompliance as the sole ground for the denial of disability benefits, and the record contains evidence showing that the claimant is financially unable to comply with prescribed treatment, the ALJ is required to determine whether the claimant was able to afford the prescribed treatment." 355 F.3d 1272, 1275 (11th Cir. 2003). However, the court distinguished between cases where noncompliance is the "primary if not exclusive" basis for denying benefits and cases where the ALJ's decision is also based on other factors. *Id.* In the latter situation, the ALJ's failure to consider a claimant's ability to afford treatment does not constitute reversible error.

The Eleventh Circuit further developed this principle in *Henry v. Commissioner of Social Security*, holding that "[w]hen the ALJ 'primarily if not exclusively' relies on a claimant's failure to seek treatment, but does not consider any good cause explanation for this failure, this court will remand for further consideration." 802 F.3d 1264, 1268 (11th Cir. 2015). The court emphasized that "poverty excuses noncompliance" and that an ALJ must "scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts" regarding a claimant's ability to pursue treatment. *Id.* at 1268-69.

In the present case, the record shows that the ALJ acknowledged Plaintiff's financial limitations but did not primarily or exclusively base his decision on Plaintiff's noncompliance with

8

treatment. The ALJ recognized that Plaintiff "had not seen a medical or mental health provider since 2021 owing to limited finances." (Tr. 17). The ALJ further noted that "although claimant had some issues with affording medication, his treatment providers offered alternative medications through indigent programs." (Tr. 18). The ALJ found it significant that despite these available options, "the claimant failed to follow through with this recommendation." (Tr. 18).

Unlike in *Henry*, where the ALJ made no inquiry into the claimant's ability to pay, here the ALJ acknowledged Plaintiff's financial constraints but also noted that Plaintiff did not take advantage of low-cost alternatives that were available to him. The ALJ observed that Plaintiff "was offered Ozempic, a diabetic medication with weight loss side effects, under indigent care, but he failed to follow up on that medication." (Tr. 18). This consideration of available alternatives distinguishes the present case from *Henry*.

Moreover, the ALJ's decision was not "primarily if not exclusively" based on Plaintiff's noncompliance with treatment. Rather, the ALJ relied on multiple factors in reaching his decision, including: (1) the objective medical evidence showing generally unremarkable examinations, (Tr. 16); (2) evidence that Plaintiff's symptoms stabilized with conservative treatment, (Tr. 17-18); (3) Plaintiff's activities of daily living, including driving and checking on his elderly father regularly, (Tr. 18); (4) the consultative psychological examination showing inconsistencies and exaggeration, (Tr. 17); and (5) the vocational expert's testimony regarding available jobs. (Tr. 19-20).

This case is more analogous to *Ellison*, where the court found no reversible error because the ALJ's determination was based primarily on the claimant's ability to work for several years despite impairments and the medical opinions supporting the ALJ's RFC finding. 355 F.3d at 1275.

9

Similarly, here the ALJ's decision relied on multiple lines of evidence beyond Plaintiff's noncompliance with treatment.

The Commissioner correctly points out in his brief that the ALJ "did not unduly rely upon Plaintiff's financial inability to afford medication as a factor in finding Plaintiff's subjective complaints inconsistent with the record as a whole." (Doc. 21 at 8). The ALJ's decision indicates that even accounting for Plaintiff's financial limitations, the totality of the evidence supported a finding that Plaintiff was not disabled as defined by the Social Security Act.

Therefore, while the ALJ did consider Plaintiff's noncompliance with treatment, this consideration was not the primary basis for the decision, and the ALJ did acknowledge Plaintiff's financial limitations and the availability of alternative treatment options. Accordingly, the ALJ's treatment of this issue does not constitute reversible error under *Ellison* or *Henry*.

### III.     Failure to Evaluate Dr. Walsh's Opinion

Plaintiff argues that the ALJ erred by failing to evaluate the medical opinion of Robin Walsh, Psy.D., pursuant to 20 C.F.R. § 404.1520c. (Doc. 18 at 13). Specifically, Plaintiff claims the ALJ did not evaluate Dr. Walsh's statement that Plaintiff "may experience difficulty with interpersonal interactions with coworkers, supervisors, and the general public, as he reports not wanting to be around others." *Id*. Plaintiff contends this constitutes a "medical opinion" that the ALJ was required to evaluate for its supportability and consistency with the record as a whole *Id*.

    1. <u>The ALJ Thoroughly Considered Dr. Walsh's Statement</u>

Here, the ALJ thoroughly considered Dr. Walsh's examination findings in their entirety. The ALJ specifically noted that "Dr. Walsh indicated that she was unable to assess various aspects of the claimant's functioning fully, such as the claimant's ability to concentrate, because of the

claimant's poor effort, apparent exaggeration, and inconsistencies between the claimant's statements and his demonstrated abilities." (Tr. 19).

Similar to *Rodriguez v. Berryhill*, where the Eleventh Circuit found substantial evidence supported the ALJ's evaluation of medical opinion evidence when the records showed the claimant had fair judgment and insight with logical thought processes, the ALJ here relied on Dr. Walsh's objective findings that demonstrated Plaintiff's abilities were not as limited as subjectively reported. See *Rodriguez v. Berryhill*, 836 F. App'x 797, 804-05 (11th Cir. 2020) (holding that substantial evidence supported the ALJ's decision to give partial weight to a physician's opinion because treatment notes undercut the severity of the limitations described). The ALJ's citation to Exhibit 1F, which contains Dr. Walsh's complete report, demonstrates that the ALJ considered the entirety of her findings. (Tr. 17-19).

    2. Dr. Walsh's Statement Does Not Constitute a "Medical Opinion" Under Applicable Regulations

The central issue is whether Dr. Walsh's statement that Plaintiff may experience difficulty with interpersonal interactions constitutes a "medical opinion" that required evaluation under 20 C.F.R. § 404.1520c.

The *Rodriguez* court provides crucial guidance on what constitutes a "medical opinion," noting that medical opinions are "statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [his] symptoms, diagnosis and prognosis, what [he] can still do despite impairment(s), and [his] physical or mental restrictions." *Rodriguez*, 836 Fed. Appx. at 801 (citing 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)).

Dr. Walsh's statement that Plaintiff "may experience difficulty with interpersonal interactions with coworkers, supervisors, and the general public, as he reports not wanting to be around others" (Tr. 310) does not constitute a medical opinion as defined in the regulations for several reasons.

First, the statement is equivocal, using the speculative term "may" rather than providing a definitive assessment of Plaintiff's functional limitations. Statements that merely suggest possibilities without definitive conclusions about functional capacity do not meet the regulatory definition of a medical opinion requiring formal evaluation under 20 C.F.R. § 404.1520c. *See LawC. v. Comm'r of Soc. Sec.*, 2023 U.S. Dist. LEXIS 237607, at *10-11 (M.D. Ga. Sept. 28, 2023) (affirming the ALJ's finding that a doctor's opinion was "not persuasive" because the doctor "used speculative terms," failed to "describe [Plaintiff's] limitations... in terms of frequency or duration" and "did not explain the support for these limitations").

Second, Dr. Walsh explicitly attributes this observation to Plaintiff's self-report ("as he reports"), not her own medical judgment. (Tr. 307-310). In *Rodriguez*, the court found that the physicians' treatment notes constituted medical opinions because "they recorded the nature and severity of Rodriguez's impairments, and his symptoms, diagnosis, and prognosis." *Rodriguez*, 836 Fed. Appx. at 805. Unlike those treatment notes, Dr. Walsh's statement here merely recounts Plaintiff's subjective complaint rather than providing her own medical assessment.

Third, Dr. Walsh's statement lacks the specificity regarding functional limitations required to qualify as a medical opinion. In *Rodriguez*, the court noted that any error in the ALJ's failure to articulate weight assigned to physicians' opinions was harmless when "their treatment notes did not provide any findings as to possible work-related limitations." *Rodriguez*, 836 Fed. Appx. at 805. Similarly, Dr. Walsh's statement does not offer specific work-related limitations.

12

As Dr. Walsh's statement is properly categorized as "other medical evidence" rather than a "medical opinion," the ALJ was not required to articulate the persuasiveness of this statement under 20 C.F.R. § 404.1520c. *See Jones v. Comm'r of Soc. Sec.*, No. 5:20-cv-247-NPM, 2021 WL 4352383, at *5 (M.D. Fla. Sept. 24, 2021) (finding statements about an impairment "moderately to severely impacting" activities of daily living and interpersonal interactions were not medical opinions under the new regulations).

Additionally, Plaintiff acknowledges this deficiency in his brief, conceding that "Dr. Walsh did not specify her opinion in vocational terms." (Pl.'s Br. at 21). This admission further supports the conclusion that Dr. Walsh's statement did not meet the regulatory definition of a medical opinion pursuant to 20 C.F.R. § 404.1513(a)(2).

### IV.    *Failure to Account for Limitation to Concentration, Persistence, and Pace*

Plaintiff argues that the ALJ erred by creating an RFC that failed to account for the moderate limitations in concentration, persistence, and pace that the ALJ found at step three of the sequential evaluation process. (Doc. 18 at 18-20). The Commissioner argues that the ALJ's RFC limitation to "simple, routine work where duties basically stay the same day to day" adequately accounts for Plaintiff's moderate limitations in concentration, persistence, and pace. The Commissioner further contends that the ALJ's RFC assessment is supported by substantial evidence, including Dr. Walsh's observations about Plaintiff's exaggeration during examination and Plaintiff's demonstrated abilities to drive and perform other daily activities requiring concentration.

The Eleventh Circuit has held that an ALJ's RFC assessment must account for limitations in concentration, persistence, or pace that the ALJ finds at earlier steps in the sequential evaluation process. In *Winschel v. Comm'r of Soc. Sec.*, the court held that an ALJ's hypothetical question to

a vocational expert must "comprehensively describe the claimant's limitations," including moderate limitations in concentration, persistence, or pace. 631 F.3d 1176, 1180-81 (11th Cir. 2011). The court noted that limiting a claimant to "simple, routine tasks or unskilled work" does not necessarily account for limitations in concentration, persistence, or pace. *Id.* at 1180.

However, the Eleventh Circuit has also recognized that an ALJ may implicitly account for such limitations when the medical evidence suggests that, despite the limitations, the claimant can perform simple, routine tasks or unskilled work. See *Mijenes v. Comm'r of Soc. Sec.*, 687 F. App'x 842, 846 (11th Cir. 2017) (finding that "because the medical evidence showed that [the claimant] could perform simple, routine tasks despite her limitations in concentration, persistence, and pace, the ALJ's limiting of [the claimant's RFC] to unskilled work sufficiently accounted for her moderate difficulties in concentration, persistence, and pace").

The substantial evidence standard is a low bar to clear. *Biestek*, 139 S. Ct. at 1154. "Even if we find that the evidence preponderates against the [Commissioner's] decision, we must affirm if the decision is supported by substantial evidence." *Bloodsworth*, 703 F.2d at 1239. "Under a substantial evidence standard of review, [Plaintiff] must do more than point to evidence in the record that supports [his] position; [he] must show the absence of substantial evidence supporting the ALJ's conclusion." *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) (per curiam) (citation omitted).

Here, the ALJ found at step three that Plaintiff had moderate limitations in concentrating, persisting, or maintaining pace. (Tr. 14-15). The ALJ explained that Plaintiff "contended that he has limitations in concentrating generally, paying attention for longer than five minutes before requiring a break, following instructions, and completing tasks." (Tr. 14). However, the ALJ also noted that Plaintiff "said that he is also able to drive, prepare meals, watch television, and handle

his own medical care." (Tr. 14). Additionally, the ALJ observed that "the record fails to show any mention of distractibility." (Tr. 14).

In formulating the RFC, the ALJ accounted for these moderate limitations by restricting Plaintiff to "simple, routine work where duties basically stay the same day to day." (Tr. 15). This limitation goes beyond the "simple, routine tasks" limitation that the *Winschel* court found potentially insufficient, as it also restricts Plaintiff to work environments with consistent, predictable duties—directly addressing concerns about persistence and pace in changing work environments.

The ALJ's decision to include this limitation in the RFC is supported by substantial evidence. The ALJ thoroughly discussed the medical evidence, noting that mental status examinations of Plaintiff "sometimes documented a depressed mood but were otherwise overall unremarkable with normal orientation, appropriate grooming and hygiene, calm and cooperative behavior, normal speech, normal motor activity, normal thought process and content, normal fund of knowledge, normal memory, normal attention span, normal associations, and normal insight and judgment." (Tr. 17).

The ALJ also considered Dr. Walsh's consultative psychological evaluation, which indicated that Plaintiff's self-reported limitations were likely exaggerated and inconsistent with his presentation. (Tr. 17-18). Dr. Walsh noted that Plaintiff's "concentration 'could not be fully assessed as he gave almost answers'" and that he "engaged in a lot of exaggeration throughout the evaluation." (Tr. 17). These observations support the ALJ's decision to include some limitations in the RFC to account for Plaintiff's moderate difficulties with concentration, persistence, and pace, while not adopting more restrictive limitations that were not supported by the record.

Furthermore, the ALJ noted that Plaintiff's symptoms were "overall stable with conservative care" (Tr. 18) and that Plaintiff was able to engage in activities requiring some level of concentration, such as driving and checking on his elderly father regularly. (Tr. 18). These findings provide additional support for the RFC limitation to "simple, routine work where duties basically stay the same day to day."

The ALJ's RFC assessment in this case is distinguishable from cases where courts have found error for failing to account for moderate limitations in concentration, persistence, or pace. Unlike in *Winschel*, the ALJ here did not merely limit Plaintiff to simple work but added the qualification that the work should involve duties that "basically stay the same day to day," thus directly addressing concerns about Plaintiff's ability to persist in tasks and maintain an appropriate pace in changing environments.

Therefore, the ALJ's RFC assessment adequately accounted for Plaintiff's moderate limitations in concentration, persistence, and pace, and is supported by substantial evidence in the record.

## CONCLUSION

As the Commissioner's decision that Plaintiff was not disabled is supported by substantial evidence, the Commissioner's decision is **AFFIRMED** pursuant to Sentence Four of § 405(g).

**SO ORDERED**, this 26th day of March, 2025.

*s/* **ALFREDA L. SHEPPARD**
UNITED STATES MAGISTRATE JUDGE